IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **PRANAV POTHINENI, *et al.*** | § | |
| | § | |
| **v.** | § | **NO. 4:25-CV-00800-ALM-BD** |
| | § | |
| **PAVAN VARENYA CHAGARLAMUDI, *et al.*** | § | |
| | § | |

**ORDER AND REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Pro se plaintiffs Pranav Pothineni and Venkateshwar Rao Prasanna Ganta filed a putative class action against Pavan Varenya Chagarlamudi and Blanca Aguilar, alleging fraud, unjust enrichment, civil conspiracy, and violations of federal securities laws. Dkt. 20 (operative complaint). The plaintiffs moved for substituted service on Chagarlamudi, Dkt. 30, and Aguilar moved to dismiss the claims against both her and Chagarlamudi, Dkt. 22; *see* Dkts. 26 (response), 28 (reply).

The motion for substituted service will be denied. The motion to dismiss should be granted and all claims dismissed.

**BACKGROUND**

**I. The Amended Complaint**

The plaintiffs allege that the defendants orchestrated a fraudulent cryptocurrency investment scheme. Dkt. 20 at 1. According to the operative amended complaint, the factual allegations in which are assumed to be true at this stage, the defendants "knowingly misrepresented the nature, risk, and legality of the investment to induce Plaintiffs and numerous others to contribute significant funds." *Id.*

The amended complaint alleges that Chagarlamudi "falsely claimed to represent or operate through ProsperEntrust & LLC" and "sign[ed] investment agreements on its behalf without authorization." *Id.* at 3 (boldface removed). Chagarlamudi allegedly "received cryptocurrency and wire transfers totaling over $1,000,000," which he and Aguilar converted for personal use. *Id.* (boldface removed).

The plaintiffs purported to bring their action "on behalf of all persons who invested in the fraudulent scheme promoted by Defendant Chagarlamudi." *Id.* at 4. They claim that they can identify at least 13 others who had similar experiences. *Id.*

The amended complaint asserts claims of fraud and violations of federal securities laws via interstate electronic communications. *Id.* at 5–6. It alleges that the plaintiffs relied to their financial detriment on Chagarlamudi's "material false statements" and promises of 70–95% profits made "with the intent to induce investment." *Id.* at 5. The amended complaint goes on to claim that Chagarlamudi violated federal securities laws by offering and selling unregistered securities. *Id.* at 6. He allegedly lied to the plaintiffs about his "registration and compliance with applicable federal and state securities laws." *Id.*

The complaint also raises an unjust-enrichment claim, alleging that the defendants "directly or indirectly retained funds obtained under false pretenses." *Id.* at 5. Chagarlamudi allegedly "exploit[ed] trust in misrepresented LLCs, personal relationships[,] falsified investment portfolios from non-existent personnel[, and] falsified investment images/app presentations." *Id.* at 5–6.

The amended complaint's putative civil-conspiracy claim includes allegations that Chagarlamudi acted in concert with Aguilar and others to defraud the plaintiffs and class members. *Id.* at 6. Aguilar's alleged contributions to the conspiracy include knowingly "redirecting funds for personal use, allowing Chagarlamudi to use her residences and banking information to conceal his location[,] . . . [and] facilitating Chagarlamudi's evasion of lawful summons and judicial process." *Id.*

Finally, the amended complaint alleges that Aguilar assisted and benefited from Chagarlamudi's fraud and facilitated his evasion of service. *Id.* at 7.

## II. Procedural History and the Parties' Arguments

The court previously granted a motion to dismiss for failure to state a claim but allowed the plaintiffs to file the amended complaint, Dkt. 21; *see* Dkts. 18 (report and recommendation). The court also granted an extension of the deadline to serve Chagarlamudi but denied the plaintiffs' request for substituted service. Dkt. 27.

Aguilar now asks the court to dismiss the amended complaint with prejudice because it fails to state a claim against either her or Chagarlamudi. Dkt. 22 at 18. She argues that the allegations do not satisfy the pleading standards stated in Federal Rules of Civil Procedure 8 and 9(b). *Id.* at 11–17. She further argues that, because no fraud claim exists, the plaintiffs' unjust-enrichment claim must fail as well. *Id.* at 12–13. She also points to the court's report explaining that no civil aiding-and-abetting claim exists under Texas law. *Id.* at 17–18 (citing Dkt. 18 at 11).

In response, the plaintiffs claim that the motion to dismiss ignores the factual allegations and exhibits referenced in the amended complaint, including "investment agreements, proof of payments, and communications used to solicit investments." Dkt. 26 at 1. Aguilar points out that those items are not referenced in or attached to the amended complaint and that the response improperly attempts to add factual allegations to the complaint. Dkt. 28 at 2–3.

The plaintiffs also moved a second time for substituted service on Chagarlamudi by email. Dkt. 30. Their motion requests that the court either permit email service or, if the evidence attached to their motion is insufficient for that purpose, order Aguilar to provide Chagarlamudi's "current and correct address" or permit Aguilar to "accept service of the Summons and Complaint on [Chagarlamudi's] behalf." *Id.* at 3.

## LAW

### I. Preliminary Proceedings in Putative Class Actions

A court should address class certification at "an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). "The word 'practicable' imports some leeway in determining the timing of such a decision," *Danny B. ex rel. Elliott v. Raimondo*, 784 F.3d 825, 837 (1st Cir. 2015), and "[i]t is well within a [court's] discretion to dispose of a motion to dismiss before acting on class certification," *Lawson v. FMR LLC*, 554 F. Supp. 3d 186, 192 (D. Mass. 2021); *see Floyd v. Bowen*, 833 F.2d 529, 534–535 (5th Cir. 1987) (collecting cases noting that courts enjoy the same discretion with respect to motions for summary judgment).

Courts consider two factors when deciding whether to rule on a dispositive motion before addressing class certification, *Watkins v. Allstate Prop. & Cas. Ins.*, 659 F. Supp. 3d 730, 732 (S.D.

Miss. 2023) (citing *Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984)), *aff'd*, 90 F.4th 814 (5th Cir. 2024): whether an early merits ruling: (1) "seems likely to protect both the parties and the court from needless and costly further litigation," *Wright*, 742 F.2d at 544; or (2) "would prejudice any of the parties," *Lawson*, 554 F. Supp. 3d at 192–93. When dispositive motions should be granted, courts often do so without addressing class certification. *See, e.g.*, *Watkins*, 659 F. Supp. 3d at 732; *King v. Baylor Univ.*, No. 6:20-CV-00504-ADA-JCM, 2021 WL 1230488, at *2–7 (W.D. Tex. Jan. 29, 2021), *report and recommendation adopted*, 2021 WL 1226562 (W.D. Tex. Mar. 31, 2021), *rev'd in part on other grounds*, No. 21-50352, 46 F.4th 344 (5th Cir. 2022); *Gaudet v. Howard L. Nations, APC*, No. 19-10356-WBV-JVM, 2020 WL 6118185, at *9–12 (E.D. La. Oct. 16, 2020).

## II. The Rule 12(b)(6) Dismissal Standard and Scope of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss for "failure to state a claim upon which relief can be granted." When considering such a motion, the court must identify and exclude legal conclusions that "are not entitled to the assumption of truth," then consider the remaining "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must accept as true all well-pleaded facts and view them in the light most favorable to the plaintiff. *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020). The complaint will survive the motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, but a complaint must nonetheless provide more than labels and conclusions; a "formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quotation marks omitted). The court's scope of review under Rule 12(b)(6) is limited to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022).

A pro se plaintiff's complaint should be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But to avoid dismissal, it must still "set forth facts giving rise to a claim on which relief may be granted." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993).

**DISCUSSION**

**I. Failure to State a Claim**

Aguilar's motion to dismiss argues that the amended complaint fails to state a claim against both her and Chagarlamudi. The motion is not signed by Chagarlamudi or an attorney for him, and as the movant, Aguilar "may obtain relief only as to [her]self; [she] has no standing to seek dismissal of the action as to nonmoving parties." *Thomas v. Johnson*, No. CV H-23-0662, 2024 WL 4142747, at *2 (S.D. Tex. Sept. 10, 2024) (quoting 5B Wright & Miller's Federal Practice & Procedure § 1349 (4th ed. 2024)).

"A district court may," however, "*sua sponte* dismiss a complaint for failure to state a claim if 'the procedure is fair.'" *Money v. City of San Marcos*, No. 24-50187, 2025 WL 429980, at *4 (5th Cir. Feb. 7, 2025) (quoting *Miller v. Sam Hou. State Univ.*, 986 F.3d 880, 888 (5th Cir. 2021)). "Fairness generally requires that the plaintiff had (1) notice of the district court's intention to dismiss the case on its own motion; and (2) an opportunity to respond and make his case." *Id.* (quotation marks omitted). In *Money*, the Fifth Circuit found it sufficient that a magistrate judge recommended dismissal of the plaintiffs' claims sua sponte, explaining that the report and recommendation provided adequate notice and the objection period a sufficient opportunity to respond. *Id.* This report and recommendation will notify the plaintiffs of the court's intention to dismiss their claims against both defendants, and they will have an opportunity to object to the report in the manner approved of in *Money*. *See Gashu v. Presbyterian Hosp. of Plano Tex.*, No. 4:25-CV-00484-SDJ-BD, 2026 WL 2032531, at *5 (E.D. Tex. July 14, 2026), *report and recommendation adopted as modified*, 2026 WL 2343086 (E.D. Tex. Aug. 12, 2026).

None of the plaintiffs' claims survive Rule 12(b)(6) review. And because the amended complaint fails to remedy the deficiencies that the court previously identified, dismissal without a further opportunity to amend is warranted.

**A. The insufficiency of the plaintiffs' claims**

**1. Fraud**

Aguilar argues that the amended complaint does not state a fraud claim because it alleges no facts "describing the content of the alleged statements or facts demonstrating how the statements were false or misleading." Dkt. 22 at 12. She is correct.

To support a claim for common-law fraud under Texas law, a plaintiff must allege: "(1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party, and (6) causing injury." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins.*, 51 S.W.3d 573, 577 (Tex. 2001)). When such a claim is brought in federal court, the plaintiff must "state with particularity the circumstances constituting [the alleged] fraud." Fed. R. Civ. P. 9(b). To satisfy that heightened pleading standard, the complaint must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). At a minimum, the complaint must allege the "time, place, and contents of the false representations." *Id.* at 179 (citation omitted).

The amended complaint recounts two allegedly fraudulent statements: (1) "Chagarlamudi falsely claimed to represent or operate through ProsperEntrust & LLC," Dkt. 20 at 3 (boldface omitted); and (2) "statements were made" (by Chagarlamudi, as the court understands the allegation) "via email, Whatsapp, and Facebook messages repeatedly in 2023, 2024 and 2025, promising profit returns of 70-95% on the Plaintiffs['] investments," *id.* at 5. As to the first statement, the amended complaint omits the time and place that it occurred, and as Aguilar points out, Pothineni—the sole proprietor of Prosper Entrust LLC, Dkt. 22 at 16, the entity to which the

amended complaint appears to refer, *see* Dkt. 20 at 3—"could not have relied on this alleged misrepresentation." Dkt. 22 at 16. As to the second statement, the amended complaint does not allege facts sufficient to show that it was fraudulent. As Aguilar notes, the amended complaint alleges neither "what returns were actually realized" nor "the extent to which Plaintiffs' investment losses, if any, were due to Chagarlamudi's conduct rather than market forces or other factors." Dkt. 20 at 12. It is hardly uncommon for investments to perform more poorly than investors hope or anticipate they will.

The court previously explained that "blanket assertion[s] of fraud will not survive a motion to dismiss." Dkt. 18 at 7 (citing *Twombly*, 550 U.S. at 555). The plaintiffs' latest effort to avoid dismissal falls short of what the law requires with respect to Chagarlamudi, and the amended complaint does not allege that Aguilar made any fraudulent statements.

**2. Unjust enrichment**

Under Texas law, pleading unjust enrichment requires the plaintiff to demonstrate that the defendant "has obtained a benefit from another by fraud, duress, or the taking of an undue advantage" or by "passive receipt of a benefit that is unconscionable to retain." *Mesilla Off. Sols., LLC v. HGS Healthcare, LLC*, No. 4:20-CV-386-SDJ, 2022 WL 510825, at *6 (E.D. Tex. Feb. 21, 2022) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). The amended complaint alleges that "Chagarlamudi initiated, pursued and manipulated to obtain funds by exploiting trust in misrepresented LLCs, personal relationships and falsified investment portfolios from non-existent personnel or falsified investment images/app presentations, rather than passive receipt." Dkt. 20 at 5–6. It also alleges that "Defendants, including Aguilar, directly or indirectly retained funds obtained under false pretenses." *Id.* at 6; *see id.* at 4 (alleging that Aguilar "knowingly accepted funds, permitted the use of her residence for fraudulent transactions, and assisted in concealing assets from potential legal action").

By "adequately stat[ing] a claim for common-law fraud," plaintiffs may adequately plead unjust enrichment "by alleging that Defendants fraudulently obtained a benefit (the payments) they ha[d] no right to retain." *Allstate Indem. Co. v. Bhagat*, 164 F.4th 426, 435–36 (5th Cir. 2026).

But as just noted, the plaintiffs failed to sufficiently plead fraud. And as the court explained before, "[a] conclusory assertion of fraud will not prevent dismissal of a related unjust-enrichment claim." Dkt. 18 at 8; *see Taylor*, 296 F.3d at 378. In support of their unjust-enrichment claim, the plaintiffs have merely piled conclusory allegations on top of conclusory allegations, which is insufficient.

**3. Civil conspiracy**

"[C]ivil conspiracy is not an independent cause of action" in Texas. *United Healthcare Servs., Inc. v. Rossel*, No. 3:21-cv-1547-L-BT, 2024 WL 4451761, at *22 (N.D. Tex. July 23, 2024) (citing *Berry v. Lee*, 428 F. Supp. 2d 546, 561 (N.D. Tex. 2006)), *report and recommendation adopted*, 2024 WL 4326539 (N.D. Tex. Sept. 27, 2024). It instead "operates as a derivative tort that allows the plaintiff to hold one conspiracy participant liable for the torts committed by another participant if the torts were committed in furtherance of an unlawful conspiracy. As a derivative tort, a plaintiff must plead and prove another substantive tort upon which to base a civil-conspiracy claim." *Id.* (citations omitted); *see Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996); *Berry v. Golden Light Coffee Co.*, 327 S.W.2d 436, 438 (Tex. 1959). Because the amended complaint fails to state a claim for fraud or unjust enrichment, there is no substantive tort on which to base a civil-conspiracy claim, so that purported claim fails, too.

**4. Violation of federal securities laws**

The amended complaint alleges that the defendants violated § 5 of the Securities Act of 1933, 48 Stat. 77, *as amended*, 15 U.S.C. § 77e, and § 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891, *as amended*, 15 U.S.C. § 78j(b). Dkt. 20 at 6. The plaintiffs recognize that a § 10(b) claim works in tandem with Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5. *Id.*; *see Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008) (noting that "Rule 10b–5 encompasses only conduct already prohibited by § 10(b)"); *SEC v. Mapp*, No. 4:16-CV-00246, 2017 WL 5177960, at *9 (E.D. Tex. Nov. 8, 2017) (treating alleged § 10(b) and Rule 10b–5 violations as a single claim). The amended complaint's allegations are insufficient with respect to both of those provisions.

**a. Section 5**

Section 5 of the Securities Act provides that,

> [u]nless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—
>
> (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or
>
> (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

15 U.S.C. § 77e(a). Section 12 of the Act creates civil liability for people who violate § 5. *See Carr v. Barnett*, No 3:18-CV-03109-N, 2022 WL 1570739, at *2 (N.D. Tex. May 18, 2022); *SEC v. Blackburn*, No. CV 15-2451, 2020 WL 565551, at *5 (E.D. La. Feb. 5, 2020). It provides that

> [a]ny person who . . . offers or sells a security in violation of [§ 5] . . . shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77*l*(a); *see Doran v. Petrol. Mgmt. Corp.*, 545 F.2d 893, 899 n.5 (5th Cir. 1977) (finding it "evident that § 5 establishes and defines proscribed conduct and that § 12(1) provides a remedy for a § 5 violation").

The amended complaint alleges that Chagarlamudi violated § 5. And even though the amended complaint does not cite § 12, a "plaintiff need not correctly specify the legal theory, so long as the plaintiff alleges facts upon which relief can be granted." *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 551 (5th Cir. 2003) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 (5th Cir. 2000)); *see Licht v. Watson*, No. 12-62197-CIV, 2013 WL 12089980, at *1 n.2 (S.D. Fla. Nov. 13, 2013) (explaining that, "[b]ecause there is no private cause of action under Section 5, courts generally construe such claims as arising under Section 12, which does provide a private right of action"), *report and recommendation adopted*, 2014 WL 12489596 (S.D. Fla. Apr. 4, 2014); *see also Erickson*, 551 U.S. at 94 (requiring liberal construction of pro se plaintiffs' complaints).

To establish a § 5 violation, a plaintiff must show that "a defendant[] (1) offered or sold a security; (2) there was no registration statement on file with the SEC or in effect as to the security; and (3) the defendant used interstate transportation, or communication, or the mails in connection with the offer or sale." *Mapp*, 2017 WL 5177960, at *8 (citing *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901–02 (5th Cir. 1980)). As the court previously noted, the original complaint included no factual allegations in support of the second of those elements. Dkt. 18 at 10.

In an apparent effort to fix that problem, the plaintiffs included some form of the word "register" several times in their amended complaint, asserting that the defendants "intentionally promised high returns on unregistered securities"; that "Chagarlamudi has maintained bank accounts and received investor funds at addresses registered to Aguilar"; that Chagarlamudi made statements "claiming registration with ProsperEntrust & LLC"; that "Chagarlamudi offered and sold unregistered securities"; that "Chagarlamudi represented that investments were legitimate, high-return cryptocurrency opportunities through ProsperEntrust & LLC and related entities," "falsely claim[ing] registration and compliance with applicable federal and state securities laws;" and that "Chagarlamudi misrepresented the registration status, promised returns on unregistered investments." Dkt. 20 at 1, 4, 5, 6. Those allegations, most of which provide only insufficient "labels and conclusions," *Twombly*, 550 U.S. at 555, do not clearly allege what is required: that "there was no registration statement on file with the SEC or in effect as to the [alleged] securit[ies]" at issue, *Mapp*, 2017 WL 5177960, at *8. The plaintiffs have therefore not cured the defect the court previously identified with respect to their § 5 claim.

But even if one or more of those allegations could squeak by under the liberal standard that governs pro se pleading, dismissal would still be required. If an effort to meet the first requirement of a § 5 claim, *see Mapp*, 2017 WL 5177960, at *8, the plaintiffs assert that, "under the Howey test," the parties' investment agreement is a "security." *Id.* (appearing to reference *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946)); *see SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 321 (S.D.N.Y. 2023) (discussing § 5 liability and the *Howey* test). The allegations in the amended complaint do not support that assertion.

The Fifth Circuit has observed that "[t]he Securities Act broadly defines the term security to include a long list of financial instruments," one of which is an "'investment contract[].'" *SEC v. Sethi*, 910 F.3d 198, 203 (2018) (quoting 15 U.S.C. § 77b(a)(1)). Noting that "Congress defined the term 'security'" but "left it to the courts to define the term 'investment contract,'" the court explained that,

> [i]n *Howey*, the Supreme Court developed a "flexible" test for determining whether an arrangement qualifies as an investment contract:
>
> > [A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party.
>
> [*Howey*, 328 U.S. at 298–99]. Distilled to its elements, an investment contract qualifies as a security if it meets three requirements: (1) an investment of money; (2) in a common enterprise; and (3) on an expectation of profits to be derived solely from the efforts of individuals other than the investor.

*Id.* (quotation marks omitted). When applying that test, courts disregard "legal formalisms and, instead, focus on the substance of the deal." *SEC v. Arcturus Corp.*, 928 F.3d 400, 409 (5th Cir. 2019) (quotation marks omitted).

As to prong one of the *Howey* test, the amended complaint's allegations are sufficient; Ganta and Pothineni allegedly invested approximately $130,000 and $290,000, respectively. Dkt. 20 at 2. As two prong two, the question is closer. Although it alleges that the plaintiffs were two of several similarly situated investors, *id.* at 4, the amended complaint does not reveal whether "the fortunes of all investors [we]re inextricably tied" together, such that there was "'a common enterprise . . . in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties,'" *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 479 (5th Cir. 1974) (quoting *SEC v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 n.7 (9th Cir. 1973)). *Cf. SEC v. Moss*, No. 4:20-CV-972-SDJ, 2022 WL 757226, at *4 (E.D. Tex. Mar. 11, 2022) (finding commonality where "the investors' purported potential returns depended on the success of the purported oil-and-gas projects, and the offerings were marketed as ventures in

which the investors would benefit from the claimed expertise and efforts of the promoters"). But even if the amended complaint satisfies that second prong, it does not satisfy the third prong because it contains no allegations about whether investors had a right to "participate in management" of those investments or instead "had a reasonable expectation that profits would be derived solely from the efforts of individuals other than themselves." *Moss*, 2022 WL 757226, at *4. The complaint therefore does not sufficiently allege that Chagarlamudi offered or sold a § 5 "security" under Supreme Court and Fifth Circuit precedent, and it does not even attempt to bring a § 5 claim against Aguilar.

**b. Section 10(b)**

Although the Securities Exchange Act "does not authorize a private cause of action for § 10(b) violations, the Supreme Court has recognized an implied right of action in the words of the statute" and Rule 10b–5. *In re Lumen Techs., Inc. Sec. Litig. II (Lumen II)*, No. 3:23-1290, 2025 WL 978229, at *14 (W.D. La. Mar. 14, 2025) (citing *Stoneridge*, 552 U.S. at 157), *report and recommendation adopted*, 2025 WL 971748 (W.D. La. Mar. 31, 2025), *rev'd on other grounds sub nom. McLemore v. Lumen Techs, Inc.*, No. 25-30264, 2026 WL 252698 (5th Cir. Jan. 30, 2026). To prevail in a § 10(b) action, a plaintiff must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Id.* (citation omitted).

In securities cases, a complaint must account not only for Rule 9(b)'s pleading standard, but also the requirements of the Private Securities Litigation Reform Act ("PSLRA"). *See id.* at *11 (citing *Hall v. Rent-A-Ctr., Inc.*, No. 4:16-cv-978, 2017 WL 6398742, at *6 (E.D. Tex. Oct. 19, 2017), *report and recommendation adopted*, 2017 WL 6379334 (E.D. Tex. Dec. 14, 2017)). The PSLRA requires plaintiffs alleging fraud to: (1) "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading"; and (2) "for 'each act or omission alleged' to be false or misleading, . . . 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* at *14 (quoting *Ind.*

*Elec. Workers' Pension Tr. Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 533 (5th Cir. 2008)). To clear that final hurdle, a plaintiff must "state with particularity facts giving rise to a strong inference that the party knew that it was publishing materially false information, or the party was severely reckless in publishing such information." *Ind. Elec. Workers*, 537 F.3d at 534 (cleaned up). "The inference of scienter must ultimately be 'cogent and compelling,' not merely 'reasonable' or 'permissible.'" *Id.* at 533 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).

Like the complaint in *Indiana Electrical Workers*, the plaintiffs' amended complaint makes "no attempt to state with particularity facts giving rise to a strong inference that [Chagarlamudi] knew or was severely reckless in not knowing," *id.* at 542, that he "falsely claimed registration and compliance with . . . securities laws," Dkt. 20 at 6. Especially when paired with the amended complaint's failure to remedy the deficiency the court previously identified with respect to this claim, *see* Dkts. 18 at 10–11, 22 at 15, that failure warrants dismissal of the § 10(b) claim against Chagarlamudi. *Lemmer v. Nu-Kote Holding, Inc.*, No. 398-CV-0161L, 2001 WL 1112577, at *4 (N.D. Tex. Sept. 6, 2001) (explaining that, "[w]hen a complaint fails to plead scienter in conformity with the PSLRA, dismissal is required"), *aff'd*, 71 F. App'x 356 (5th Cir. 2003) (per curiam); *see Ind. Elec. Workers*, 537 F.3d at 533; *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994). And as with the § 5 claim, the amended complaint does not allege that Aguilar violated § 10(b).

**5. Aiding and Abetting**

The court has already informed the plaintiffs that "Texas courts do not recognize civil aiding-and-abetting claims." Dkt. 18 at 11 (citing *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781–82 (5th Cir. 2018)). Their attempt to bring a cause of action against Aguilar for aiding and abetting is therefore futile and a violation of the court's instruction to not "raise nonexistent claims." *Id.*

**B. The propriety of dismissal without another opportunity to amend**

When the court dismisses a pro se complaint, the plaintiff should usually be afforded an opportunity to amend, *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam), unless

"the pleadings 'demonstrate that the plaintiff has pleaded his best case,'" *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 424 (5th Cir. 2017) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792–93 (5th Cir. 1986)). The Fifth Circuit recently reminded lower courts and litigants that even a pro se plaintiff who has had one opportunity to amend is entitled to another if "it is not clear that [he] amended his complaint with a sufficient understanding of the inadequacies in his original pleading or that he has pleaded his *best case*." *Davis v. Warren*, 173 F.4th 566, 576 (2026) (quoting *Alderson*, 848 F.3d at 424).

Here, the plaintiffs' amended complaint failed to remedy the defects that the court explained at length in its report recommending dismissal of the original complaint. *See* Dkt. 18. The plaintiffs have pleaded their best case. The court therefore agrees with Aguilar that further amendment would be futile, so Pothineni and Ganta's claims against both defendants should be dismissed without an opportunity for further amendment. *See United States ex rel. Handloser v. Infosys Ltd.*, 838 F. Supp. 3d 644, 654 (E.D. Tex. 2025).

**II. The Plaintiffs' Request for Substituted Service on Chagarlamudi**

After more than 90 days passed without service on Chagarlamudi, the plaintiffs moved for substituted service and to extend the service deadline. Dkt. 19. The court extended the service deadline but denied the plaintiffs' request for leave to serve Chagarlamudi by email. Dkt. 27. The court's order pointed the plaintiffs to Texas Rule of Civil Procedure 106, which governs service in this case, *see* Fed. R. Civ. P. 4(e)(1), and explained that "any further motion to serve Chagarlamudi by email must not only include the sworn statement that Rule 106(b) requires but must also attach evidence that the email address to be used for service is active, such that its use would be reasonably effective to give Chagarlamudi notice of the suit." Dkt. 27 at 4.

The plaintiffs then filed a second motion for substituted service that includes neither a sworn statement that strictly complies with Rule 106(b) nor evidence that email service at the address provided would be reasonably effective to notify Chagarlamudi of the suit. Dkt. 30. Even assuming the amended complaint could state a claim against Chagarlamudi, those deficiencies require denial of the motion and provide an independent basis for dismissal of the claims against Chagarlamudi.

**A. The absence of strict compliance with Rule 106(b)'s requirements**

A court may authorize substituted service only if the plaintiff's sworn statement "strictly complies with the requirements of" Rule 106(b). *Rock Island Auction Co. v. Dean*, No. 3:23-CV-2642-S-BN, 2024 WL 1837970, at *2 (N.D. Tex. Apr. 26, 2024). That rule requires a sworn statement to "stat[e] specifically the facts showing that service has been attempted . . . at the location named in the statement but has not been successful." Tex. R. Civ. P. 106(b).

The motion includes a sworn statement by the plaintiffs, Dkt. 30 at 3–4, but it does not provide the dates and times that failed attempts were made to serve Chagarlamudi. It is therefore deficient. *See Coronado v. Norman*, 111 S.W.3d 838, 842 (Tex. App.—Eastland 2003, pet. denied) (collecting Texas cases holding that affidavits were insufficient because they did not state "the dates and times of attempted service").

The statement also does not discuss the plaintiffs' alternative service requests. The plaintiffs alternatively request that, if the court determines that the evidence attached to their motion is insufficient to warrant service by email, the court either order Aguilar to provide Chagarlamudi's "current and correct address" or permit Aguilar to "accept service of the [s]ummons and [c]omplaint on [Chagarlamudi's] behalf." Dkt. 30 at 3. They argue that service on Aguilar would be reasonably effective to give Chagarlamudi notice of the suit because she is Chagarlamudi's "spouse and co-defendant in this action." *Id.* The sworn statement does not, however, provide any facts to show that service on Aguilar would be reasonably effective to inform Chagarlamudi of the suit. It fails to strictly comply with Rule 106(b) as to the plaintiffs' alternative service requests for that reason, too.

**B. The plaintiffs' failure to show recent use of the proposed email address**

The plaintiffs also fail to show that email is an appropriate means of service. Although the motion attaches screenshots of email messages, *id.* at 16, 24–25, it acknowledges that "[t]he most recent communication from [Chagarlamudi] using th[at] email address occurred in May 2025," *id.* at 2, more than a year before the plaintiffs filed the motion. "An email was recently used if it was used for communication within three months of the date that the motion for substituted service

was filed, but email communication more than six months from the date the motion was filed does not qualify as recently used." *First Commonwealth Bank v. Greater Servs. CIL LLC*, No. 3:24-CV-02985-S, 2025 WL 488419, at *2 (N.D. Tex. Feb. 13, 2025) (quotation marks omitted). The plaintiffs therefore have not shown that email service would be reasonably effective to give Chagarlamudi notice of the suit.

**C. Disposition**

Federal Rule of Civil Procedure Rule 4(m) provides that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Rule 41(b) authorizes involuntary dismissal of an action "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." The court may dismiss an action under that rule sua sponte. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962); *Campbell v. Wilkinson*, 988 F.3d 798, 800 (5th Cir. 2021).

The plaintiffs' second motion for substituted service is deficient despite the court's order explaining Rule 106(b)'s requirements. The plaintiffs also failed to serve Chagarlamudi within the time ordered by the court. *See* Dkt. 27 at 4. Those failures support denial of the motion and dismissal of the plaintiffs' claims against Chagarlamudi.

## CONCLUSION AND RECOMMENDATION

It is **ORDERED** that the motion for substituted service, Dkt. 30, is **DENIED**.

It is **RECOMMENDED** that the motion to dismiss, Dkt. 22, be **GRANTED** and that Pothineni and Ganta's claims against Chagarlamudi and Aguilar be **DISMISSED WITH PREJUDICE**.

* * *

Within 14 days after service of this report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1).

A party is entitled to a de novo review by the district court of the findings and conclusions contained in this report only if specific objections are made. *Id.* § 636(b)(1). Failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

So **ORDERED** and **SIGNED** this 5th day of November, 2026.

Bill Davis
United States Magistrate Judge